IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LAURA ESCALANTE FACUNDO; EDUARDO ROVIRA GÁNDARA; and their COMMUNITY PROPERTY LEGAL PARTNERSHIP,<br><br>Plaintiffs<br><br>v.<br><br>MCS MEDICAL CARD SYSTEM, INC.,<br><br>Defendants | CIVIL NO. 10-   (   )<br><br>BREACH OF EMPLOYMENT CONTRACT; RETALIATION; LIQUIDATED, COMPENSATORY and DOUBLE DAMAGES; ARTICLES 1802 and 1803<br><br>TRIAL BY JURY |

COMPLAINT

TO THE HONORABLE COURT:

Plaintiffs, through the undersigned attorneys, very respectfully state and pray:

NATURE OF THE ACTION AND JURISDICTION

1.  The instant action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a and 1988; Puerto Rico's Act No. 17 of April 22, 1988; Puerto Rico's Act No. 69 of July 6, 1985; and Articles 1802 and 1803 of the Puerto Rico Civil Code to seek redress for defendant's sex discrimination and retaliation against Laura Escalante Facundo ( hereafter "Escalante"), and breach of contract, leading up to her Termination for Good Reason under her Employment Agreement of September 21, 2009 defendant Medical Card System, Inc. (hereafter referred to as "MCS"). Plaintiff seeks

equitable and injunctive relief, compensatory, double and punitive damages, prejudgment interests, costs and reasonable attorneys' fees. Co-plaintiffs Eduardo Rovira Gándara (hereafter "Rovira") husband of Escalante and the Community Property Legal Partnership (hereafter referred to as "CPLP") constituted between them, seek compensation for their damages, including the loss of income and the emotional pain and suffering proximately caused by the discriminatory and retaliatory treatment to which Escalante was unlawfully submitted by defendant.

    2.    This Court has jurisdiction to entertain this action pursuant to § 706 of the Civil Rights Act (42 U.S.C. §2000e-5); 28 U.S.C. § 1331 and §1343(4). Plaintiff also invokes this court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear the Commonwealth law and Breach of Employment Agreement claims because these are so related to the claims over which this court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

    3.    Venue is proper in this district pursuant to 28 U.S.C. §1391 (b)(1) and (2).

ADMINISTRATIVE PROCEEDINGS

    4.    On November 30, 2009, Escalante filed an administrative charge before the Anti-Discrimination Unit of the Department of Labor of Puerto Rico and the Equal Employment Opportunity Commission ("EEOC") against MCS alleging sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 USC § 2000e-3 (a and

b) and 42 USC §§ 1981a, respectively, and 1988.

5. On August 6, 2010, the EEOC issued its Notice of Right to Sue to Escalante and mailed it to her on the following day. Escalante received the Notice of Right to Sue on August 10, 2010.

6. The instant complaint is being timely filed within 90 days of plaintiff's receipt of the EEOC's Notice of Right to Sue. The claim by Rovira and the CPLP are timely because they filed a lawsuit in the Puerto Rico Court of First Instance, San Juan Superior Part, *Eduardo Rovira y otros v. Medical Card Systems, Inc.* Civil No. KDP10-1433 (802) within one year of defendants' last act of retaliation and Escalante's Termination of Employment for Good Reason in retaliation for having engaged in protected activity under Title VII and the Civil Rights Act of 1991. Thus, the present complaint is timely as it regards all plaintiffs.

## PARTIES

7. Escalante is of legal age, married to Rovira and a resident of Guaynabo, Puerto Rico.

8. Rovira is of legal age, married to Escalante and a resident of Guaynabo, Puerto Rico.

9. Co-plaintiff, CPLP is a separate juridical entity with the capacity to sue and be sued.

10. MCS is an "employer" within the meaning of §701(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b). It is also an employer under the laws of the Commonwealth of Puerto Rico pursuant to which plaintiffs are

seeking relief.

11. At all times relevant herein, co-defendant MCS had more than 500 employees.

## RELEVANT FACTS

12. Escalante repeats and realleges each and every preceding allegation as if fully set herein.

13. Escalante started working with MCS on June 9, 2008 as Vice President of Legal and Regulatory Risk.

14. Due to her excellent performance she was given a substantial increase in her annual compensation. Later, on September 21, 2009 she was promoted to the position of Chief Compliance Officer and Legal Counsel.

15. The promotion to this position was established in a written Employment Agreement for the term of two years, commencing on even date.

16. Her direct report and immediate supervisor at all times pertinent to this action, was Gregory H. Wolf, President and Chief Executive Officer of MCS.

17. On or about September of 2009, Escalante participated in a sexual harassment investigation, as a witness, concerning allegations involving MCS' Chief Financial Officer, Mr. Mark Rishell (hereafter referred to as "Rishell" or "Mr. Rishell").

18. At a company meeting at Piropo Tapas Bar, Rishell had consumed several alcoholic beverages and, at one point, physically caressed and touched one of his female subordinates in front of the other employees who were present.

19.     Approximately one to two weeks later, a fellow employee of MCS Corporate Affairs Division informed her that an investigation would be conducted by Human Resources to determine if Rishell had engaged in sexual harassment. Ms. López informed Escalante that both would be interviewed by the Human Resources Department.

20.     Acting upon that the information provided by López, Eacalante contacted the Assistant Vice President for Humana Resources, Ms. Ginette Oppenheimer as to the veracity of the information and when Escalante's interview would take place.

21.     Oppenheimer confirmed that an investigation was being conducted regarding certain conduct of Rishell at the Pirpopo's activity and that Escalante would be interviewed.

22.     The investigation was carried out by Ginette Oppenheimer, Human Resources Assistant Vice President, and by Camelia Jiménez, Employee Relations Manager.

23.     Escalante was later interviewed by Oppenheimer and Jiménez.

24.     During the sexual harassment investigation interview held with Escalante, she confirmed that Mr. Rishell had touched and caressed the back of Ms. Lisa Cintrón.  She was the Financial Analysis Director and his subordinate.

25.     As part of carrying out her assignment and on at least three occasions, Escalante requested copies of the notes of the interviews from Oppenheimer.  Oppenheimer did not produce the notes of the interviews, even

though ordered by her superior.

26. On October 26, 2009, Escalante called Oppenheimer and asked her one final time to produce the copies of the interviews. Oppenheimer refused to produce the notes of the interviews to Escalante.

27. On October 30, 2009, just four days after Escalante's last request for the interview notes to Oppenheimer, MCS unilaterally removed Escalante's duties as Chief Compliance Officer and Legal Counsel.

28. This decision by MCS was in retaliation for having participated in the sexual harassment investigation and also constituted "Good Reason" under the Employment Agreement for Escalante to terminate her employment with MCS.

29. On October 30, 2009, Escalante terminated her employment as Chief Compliance Officer and Legal Counsel with MCS for "Good Reason."

30. Despite having Good Reason to terminate her employment with MCS, the Company refused to honor the remedy provided by the Employment Agreement in retaliation for having participated in protected activity under Title VII and the Civil Rights Act of 1991.

31. As a result of the discriminatory and retaliatory termination, Escalante has suffered extensive emotional damages, including but not limited to loss of income at the rate of $15,916.66 per month; loss of self esteem; anxiety, depression and insomnia, among others.

32. Also, Escalante' family relations have been adversely affected as a proximate result of defendant's unlawful conduct. Plaintiffs have been

deprived of her income and the financial stability which plaintiffs enjoyed as a result of the fruits of her labor.

33. Escalante's children were deprived of educational and recreational opportunities that were no longer affordable after she was constructively discharged.

34. At all relevant times, MCS knew that its conduct violated Escalante's federally protected rights.

35. Defendant is liable for all damages suffered by plaintiffs as a proximate result of its unlawful conduct.

FIRST CAUSE OF ACTION
(Retaliation under Title VII)

36. Escalante incorporates by reference every preceding allegation as if fully set herein.

37. Escalante participated as a witness in the sexual harassment investigation conducted by MCS's Assistant Vice President for Human Resources Ginnette Oppenheimer.

38. Escalante's testimony was adverse to and indicative of Mark Rishell's potentially sexual harassing conduct, including physical contact.

39. As part of her attempt to bring the sexual harassment investigation to a conclusion, she requested information from Ginnette Oppenheimer regarding her preliminary findings.

40. Four days after this last request and without Escalante's prior consent, MCS informed Escalante, through Mr. Julio Juliá, the President of one of MCS subsidiaries (MCS Advantage), of a "material reduction of

Escalante's duties and responsibilities".

41. This material reduction constituted "Good Reason" under the Employment Contract for Escalante to terminate her employment relationship with MCS.

42. MCS refused to pay Escalante the liquidated damages provided for in the Employment Agreement in the event of Escalante's Termination for "Good Reason."  This deprivation of the remedy contemplated in the Employment Agreement was in retaliation for Escalante's participation in the sexual harassment investigation against Rishell.

43. In fact, Mr. Juliá, in the presence of José Mirabal, the President of another one of MCS' subsidiaries (MCS HMO), told Escalante that from then on Compliance functions would report to Mirabal and instructed both to meet with the staff and "coordinate the transfer" of supervisory duties.  This was a retaliatory demotion on the part of MCS.

44. Upon Escalante's inquiry as to the scope of her functions from then on, Mr. Juliá answered that the it had not been defined yet and that in the meantime she could do the same work her Legal department subordinates did; basically act as case manager, answer routine legal consults, and review routine contracts.

45. MCS failed to assign new duties to Escalante consistent with her position of Chief Compliance Officer and Legal counsel in breach of section 7(f) of the Employment Agreement.

46. The acts of MCS in depriving Escalante of her assigned supervisory duties and responsibilities, as established in her Employment Agreement, forced her to terminate the Employment Agreement for "Good Reason."

47. These actions and omissions by MCS constitute an adverse employment action under the Civil Rights Act of 1991 and Title VII and were intended by MCS to force Escalante's resignation.

48. On October 30, 2009, Escalante was left with no other reasonable alternative but to terminate the Employment Agreement in light of MCS' material breach.

49. As a proximate result of defendant's conduct, plaintiff is entitled to compensation for all damages proximately caused by said illegal and/or unlawful conduct.

50. As a result of defendant's conduct, Escalante has suffered damages for which defendant is fully liable.

SECOND CAUSE OF ACTION
(Retaliation under Puerto Rico Law)

51. Escalante incorporates by reference each and every preceding allegation, specifically those contained in ¶¶ 37-48, as if fully set herein.

52. These actions and omissions by MCS constitute an adverse employment action under Act No. 17 of April 22, 1988 and Act No. 69 July 6, 1985 because they were in retaliation for having engaged in protected conduct and were intended by MCS to force Escalante's termination of the Employment Agreement.

53. As a result of defendant's conduct, Escalante has suffered damages for which defendant is fully liable. Under the above cited statute, defendant is liable for double the amount of damages suffered by Escalante.

54. Pursuant to Law No. 17 and Law No. 69, Escalante is entitled to reasonable attorneys' fees, including litigation expenses, and the costs of this action.

THIRD CAUSE OF ACTION
(PUNITIVE DAMAGES)

55. Escalante incorporates by reference every preceding allegation as if fully set herein.

56. MCS' decision to reduce Escalante's duties and to deprive her of the liquidated damages provided by the Employment Agreement in retaliation for having engaged in protected conduct constitutes a violation of Title VII and the Civil Rights Act of 1991.

57. MCS knew or should have known that its conduct towards Escalante violated her federally protected rights under Title VII and the Civil Rights Act of 1991 to be free of retaliatory conduct for having engaged in protected activities.

58. MCS' conduct constitutes a wanton and reckless disregard towards Escalante's federally protected rights.

59. MCS has more than 500 employees.

60. Escalante is entitled to punitive damages in an amount not less than $300,000.00.

FOURTH CAUSE OF ACTION
(Breach of Contract)

61.  Escalante incorporates by reference every preceding allegation as if fully set herein.

62.  The Employment Agreement provided, *inter alia*, that it could be terminated by Escalante for "Good Reason".

63.  Section 22(c) of the Agreement provides in pertinent part:

> "Good Reason" means the occurrence of any of the following events without the prior consent of Executive:
>
> (i)…, (ii)… material reduction by the Company of Executive's duties or responsibilities or the assignment to Executive of duties materially inconsistent with such position, or (iii)…

64.  On October 30, 2009, without the prior consent of Escalante, MCS through Mr. Julio Juliá, deprived Escalante of her duties of Chief Compliance Officer.  Juliá also demanded that Escalante schedule a meeting with the Compliance Department staff and Mr. José Mirabal to work on transitioning the supervision of compliance duties to Mr. Mirabal.

65.  No reason was offered to Escalante for such radical and unilateral modification of her responsibilities under the Employment Agreement. This modification constituted a demotion.

66.  When Escalante inquired as to her new duties, neither Mr. Juliá nor Mr. Mirabal knew what her new duties and responsibilities would be.  All they could muster was that she could work as a case manager, which was some of the work Escalante's subordinates performed.

67. Despite Escalante's request, Mr. Juliá refused to discuss with her the contractual implications of MCS' unilateral and unconsented reduction of her duties and responsibilities.

68. The above described action by MCS constituted "Good Reason" for Escalante to terminate the Employment Agreement under the terms of the contract.

69. As a result of Escalante's termination of the Agreement for "Good Reason" she was entitled to receive $191,000.00 in twelve equal monthly installments.

70. Escalante is entitled to receive the $191,000.00 as provided in section 8 of the Employment Agreement.

71. Escalante is also entitled to receive interest from the time each monthly payment was due until it is finally paid.

72. Escalante is also entitled to receive compensation for all damages suffered on account of MCS' breach of the Employment Agreement.

73. As a proximate result of defendant's conduct, plaintiff is entitled to compensation for all damages proximately caused by said illegal and/or unlawful conduct.

FIFTH CAUSE OF ACTION
(Articles 1802 and 1803 of the Civil code)

74. Escalante incorporates by reference every preceding allegation as if fully set herein.

75. Rovira and the CPLP, have suffered economic damages in the amount of $191,000.000 resulting from MCS' breach of the Employment

Agreement, plus consequential damages.

76. These damages continue to increase at the rate of $15,916.66 per month.

77. Rovira has suffered emotional damages as a result of MCS' discriminatory and retaliatory conduct against Escalante.

78. Rovira is entitled to receive compensation for each and every damage suffered as a result of MCS' retaliatory and discriminatory conduct upon her wife pursuant to *Santini v. Serv. Air,* 137 D.P.R. 1 (1994). Those damages are currently estimated in an amount of no less than $250,000.00.

## TRIAL BY JURY

79. Escalante demands that the instant action be tried before a jury.

WHEREFORE, premises considered, plaintiff prays from this Honorable Court for the following relief:

1. Economic Damages resulting from the breach of contract in an amount of no less than $382,000.00;

2. An award of compensatory damages for Escalante's emotional injuries, pain and suffering in an amount not less than $1,000,000.00;

3. Punitive damages in an amount not less than $300,000.00;

4. Double compensatory damages pursuant to Puerto Rico Acts No. 17 and/or No. 69.

5. Costs and reasonable attorneys' fees;

6. Prejudgment Interests;

7. Tax bracket differential; and,

8. Any other relief which this Court may deem just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 5th day of November, 2010.

> GONZÁLEZ MUÑOZ LAW OFFICES, PSC
> P.O. BOX 9024055
> SAN JUAN, P.R. 00902-4055
> TEL: 787-766-5052
> FAX: 787-766-5551
> polonorteprlaw@gmail.com
> jrgmlaw@gmail.com
>
> s/ *Juan Rafael González Muñoz*
> JUAN RAFAEL GONZALEZ MUÑOZ
> USDC-PR No. 202312
>
> MANUEL PORRO VIZCARRA
> LAW OFFICES
> Calle Escorial 382
> Urb. Caparra Heights
> San Juan, P.R. 00920
> Telephone 787-774-8200
> Facsimile 787-774-8297
>
> s/ *Manuel Porro Vizcarra*
> MANUEL PORRO-VIZCARRA
> USDC # 207006
> mpvlaw@centennialpr.net